IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THEO M. *et al.*,<br><br>                    Plaintiffs,<br>v.<br><br>BEACON HEALTH OPTIONS *et al.*,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:19-cv-364-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a Partial Motion to Dismiss filed by Defendants Beacon Health Options ("Beacon") and Chevron Corporation Mental Health and Substance Abuse Plan ("the Plan"), (collectively, "Defendants"). [Docket 6]. Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs Theo M. ("Theo"), Christa R. ("Christa"), and M.M. ("M.") (collectively, "Plaintiffs") are natural persons residing in California. Theo and Christa are M.'s parents. Theo maintained mental health benefits through a self-funded employee welfare benefits plan (the "Plan"). Beacon served as the third-party administrator for the Plan at all times relevant to this case. Theo was, and remains, a participant in the Plan. Similarly, M. was, and remains, a beneficiary of the Plan.

During his early childhood, M. exhibited anxiety and had difficulty dealing with transitions and changes in plans. To address his anxiety, M. received tutoring and occupational therapy, as well as medication. In addition, he was placed on an individual education plan and began seeing a therapist twice a week.

Despite these interventions, M. continued to have chronic meltdowns at home, initially lasting two to three hours, but gradually increasing in intensity. M.'s anxiety was exacerbated by the intense bullying to which he was subjected during middle school. This bullying led to increased aggression and eventual physical altercations with his younger sister. M.'s therapist at the time advised that M. not be left at home unsupervised and that he not be allowed to access sharp objects. As his anxiety worsened, M. began to binge eat and, over the course of one summer, gained forty pounds.

M. began treatment with a new therapist, who expressed concerns about M.'s mental and emotional state and broached the possibility of hospitalization. M. was placed on medication for attention deficit disorder, which worsened his anxiety. This eventually led to M. tying a rope around his neck and attempting to choke himself. M. discontinued most of his medications at that time.

M. was taken of school in the middle of seventh grade and transferred to a private school with a more accommodating environment for children with learning differences. He then began homeschooling with live-in childcare. While M.'s behavior initially improved, it soon regressed. Around this time, M. was diagnosed with autism.

M. began smoking, drinking, and using methamphetamine. He overdosed on Adderall and had an extreme behavioral meltdown, at which time he was admitted to an adolescent psychiatric unit for three days. M.'s parents sought to monitor him constantly after this incident but were unable to do so. M. attempted to run away and left a note indicating that he had suicidal intentions. When he was found, M. was taken to the emergency room, where methamphetamine was found in his system. After this incident, M.'s behavior continued to deteriorate. As a result, Theo and Christa sought treatment for M. at residential treatment facilities.

## I. Treatment at Aspiro Wilderness Adventure Therapy

M. was admitted to Aspiro Wilderness Adventure Therapy ("Aspiro") on May 26, 2015 and completed treatment there on August 5, 2015. Aspiro is licensed treatment program providing sub-acute inpatient treatment to adolescents with mental health, behavioral, or substance abuse disorders. On March 24, 2016, Beacon denied payment for M.'s treatment at Aspiro. Beacon's reviewer denied the claim for benefits because M. did not meet the medical necessity criteria for treatment at a residential treatment center. Compl. ¶ 21.

Theo and Christa submitted a level one appeal of Beacon's decision to deny benefits. In September of 2016, Beacon upheld the denial on the basis that residential treatment was medically necessary, but that Aspiro did not qualify as a mental health residential treatment program. Compl. ¶ 27. Theo and Christa again appealed. In December of 2016, Beacon upheld the denial, this time concluding that treatment at a residential mental health program was not medically necessary. Compl. ¶ 33. Finally, Theo and Christa appealed to an external review agency, ALLMED. In June of 2017, ALLMED upheld Beacon's denial of benefits, concluding that residential mental health treatment was not medically necessary for M. Compl. ¶ 37.

## II. Treatment at Daniels Academy

M. was admitted to Daniels Academy ("D.A.") on August 6, 2015 and completed treatment there on May 19, 2017. D.A. is licensed treatment program. It provides sub-acute inpatient treatment to adolescents with mental health, behavioral, or substance abuse disorders and specializes in treating individuals on the autism spectrum. In October of 2015, Beacon denied payment for M.'s treatment at D.A. because M. did not meet the medical necessity criteria for treatment at a residential treatment center and because D.A. did not qualify as a residential treatment center. Compl. ¶ 39.

Theo and Christa submitted a level one appeal of Beacon's decision to deny benefits. In April of 2016, Beacon upheld the denial on the same bases. Theo and Christa again appealed. In August of 2016, Beacon upheld its denial, this time alleging that it was impossible to validate the medical necessity of M.'s treatment at a residential facility. Compl. ¶ 52. Finally, Theo and Christa appealed to an external review agency, MCMC. In January of 2017, MCMC upheld Beacon's denial of benefits, concluding that residential mental health treatment was not medically necessary for M. Compl. ¶ 57.

Plaintiffs filed this suit in May of 2019, bringing two causes of action. First, they allege that Defendants breached their fiduciary duties and failed to comply with their obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001 *et seq*. Second, they allege that Defendants violated the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), codified at 29 U.S.C. § 1185a(a)(3)(A)(ii). Defendants now move to dismiss Plaintiffs' second cause of action and to dismiss Plaintiff Christa R.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

## ANALYSIS

Defendants move this court to dismiss Plaintiffs' second cause of action brought under the Parity Act. They first allege that Plaintiffs have failed to state a claim for relief under the Parity Act. Alternatively, they argue that, if Plaintiffs have stated a claim for relief, that claim is duplicative of their first cause of action alleging wrongful denial of benefits under the Plan. In addition, Defendants move for the dismissal of Plaintiff Christa R., asserting that she lacks standing to bring this suit.

**I.     ERISA and the Parity Act**

"ERISA regulates employee pension and welfare benefit plans." *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1249 (10th Cir. 2004). Congress enacted it "to promote the interests of employees and their beneficiaries in employee benefit plans." *Id.* at 1250 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). In designing ERISA, Congress sought both "to offer employees enhanced protection for their benefits," and to avoid "creat[ing] a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

A. ERISA's Enforcement Scheme

Section 502(a), codified at 29 U.S.C. Section 1132(a), is ERISA's enforcement scheme "consist[ing] of several carefully integrated provisions." *Millsap*, 368 F.3d at 1250. Relevant to this dispute are Sections 502(a)(1)(B) and 502(a)(3).

Section 502(a)(1)(B) authorizes a plan participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) authorizes a plan participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain

other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Taken together, "ERISA's remedial provisions empower plan participants or beneficiaries to pursue two types of remedies: one for monetary relief seeking to 'recover benefits due' under the terms of their insurance plan, and another 'to obtain other appropriate equitable relief' for violations of the plan or other ERISA statutory rights." *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1218–19 (D. Utah 2019) (quoting 29 U.S.C. § 1132(a)(1)(B), (a)(3)). Thus, where neither Section 502(a)(1)(B) nor any other subsection of Section 502 adequately remedies an injury caused by an ERISA violation, Section 502(a)(3) acts "as a safety net." *See Varity*, 516 U.S. at 512.

B. The Mental Health Parity and Addiction Equity Act

The Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), codified at 29 U.S.C. Section 1185a, is an amendment to ERISA. It is designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *M.S. v. Premera Blue Cross*, 2020 WL 1692820, at *3 (D. Utah Apr. 7, 2020) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).

Broadly, the Parity Act requires that "insurance plans providing for 'both medical and surgical benefits and mental health or substance use disorder benefits' must not impose more coverage restrictions on the latter than [they] impose[] on the former." *Christine S.*, 428 F. Supp. 3d at 1219. Relevant to this case, it "prohibits insurers from imposing 'treatment limitations' on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims." *M.S.*, 2020 WL 1692820, at *3.

Treatment limitations can take two forms: quantitative and nonquantitative. Quantitative treatment limitations are expressed numerically, such as a limit of fifty outpatient visits per year, while nonquantitative treatment limitations "otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations on mental health benefits include, for example, "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness" and "[r]efusal to pay for higher-cost therapies until it can be shown that a lower-cost therapy is not effective." 29 C.F.R. § 2590.712(c)(4)(ii). "[A]ll 'processes, strategies, evidentiary standards, or other factors used in applying' non-quantitative treatment limitations are subject to the statute's parity requirements." *Christine S.*, 428 F. Supp. 3d at 1219 (quoting 29 C.F.R. § 2590.712(c)(4)(i)).

Plaintiffs can allege a Parity Act violation through a facial challenge to a benefits plan's written requirements or through an as-applied challenge to the provider's implementation of the plan in practice. *David S. v. United Healthcare Ins. Co.*, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019). In this case, Plaintiffs bring an as-applied challenge. They allege that Defendants violated the Parity Act when Beacon imposed additional medical necessity criteria to deny coverage of treatment at Aspiro and D.A., two mental health and substance abuse facilities.

**II.     Plaintiffs Have Sufficiently Pleaded a Parity Act Claim**

Defendants first argue that this court must dismiss Plaintiffs' Parity Act cause of action because Plaintiffs have failed to state a claim for which relief can be granted. The court concludes that Plaintiffs have sufficiently pleaded their Parity Act claim.

A.  Parity Act Pleading Standard

Due to the lack of Tenth Circuit guidance on Parity Act pleading standards, "there is no clear law on what is required to state a claim for a Parity Act violation." *Michael D. v. Anthem*

7

*Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019). However, this court recently identified the prevailing pleading standard for Parity Act claims, which requires that plaintiffs plead

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared.

*Id.* Generally, the third and fourth prongs of the prevailing standard present a more substantial pleading challenge for parties than the first two prongs. Thus, in most cases, this standard can be distilled into a two-part test, requiring that a plaintiff "allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services." *M.S.*, 2020 WL 1692820, at *4 (citation omitted).

The parties in this case do not ask that this court apply the prevailing standard, however. Rather, they contend that Plaintiffs must allege "that the mental health or substance abuse services at issue meet the criteria imposed by [the] insurance plan and that the insurer imposed some additional criteria to deny coverage of the services at issue." *Anne M. v. United Behavioral Health*, 2019 WL 1989644, at *2 (D. Utah May 6, 2019) (alteration in original). Because neither party contests the use of this pleading standard, and because it resembles the distilled two-part version of the prevailing standard, the court will apply this pleading standard to Plaintiffs' complaint.

B.  Plaintiffs' Complaint Meets the Pleading Requirements for a Parity Act Claim

Plaintiffs have sufficiently pleaded "that the mental health or substance abuse services at issue meet the criteria imposed by [the] insurance plan and that the insurer imposed some additional criteria to deny coverage of the services at issue." *Anne M.*, 2019 WL 1989644, at *2. First, they allege facts to support the contention that Aspiro and D.A. both met the requirements

of the Plan and that M. met the medical necessity requirements for treatment at Aspiro and D.A. Second, they have sufficiently alleged that Beacon required M. to satisfy acute care medical necessity criteria rather than sub-acute care criteria in order to obtain benefits, despite the fact that both Aspiro and D.A. offer sub-acute care. Finally, Plaintiffs have identified comparable medical and surgical treatment services and sufficiently pleaded that Beacon does not similarly impose acute care medical necessity criteria on plan participants and beneficiaries seeking coverage of those services. Thus, Plaintiffs have met their burden at this stage.

            1)        Aspiro and D.A. Treatment Met Plan Criteria

Plaintiffs have pleaded facts sufficient to support their claim that M.'s treatment at Aspiro and D.A. met the criteria imposed by the Plan. They allege both that the services offered fell within the scope of the Plan's coverage and that M. met the medical necessity requirements for intermediate level mental health services.

First, Plaintiffs plausibly allege that treatment at Aspiro and D.A. fell within the scope of the Plan. Compl. ¶¶ 29; 41. They allege that Aspiro is licensed by the State of Utah to provide therapeutic outdoor behavior services, that Aspiro provided "active medical oversight" through access to regular nursing care and doctorate level clinicians and medical staff, and that Aspiro was accredited by various programs. Compl. ¶ 30. They contend that Aspiro therefore met the definition of "intermediate level mental health service," a covered benefit under the Plan. Compl. ¶ 31. Similarly, they allege that D.A. is licensed by the State of Utah to provide residential treatment services and that it met Beacon's criteria for a residential treatment center. Compl. ¶¶ 41; 48.

Second, Plaintiffs plead facts to plausibly establish that M. met the Plan's criteria for residential treatment and that the clinical record supported this conclusion. Compl. ¶ 41; 56. They assert that medical professionals recommended M's treatment at a residential mental health

9

program such as Aspiro and D.A. and that M. provided evidence of those professionals' recommendations, letters of medical necessity, and psychological assessments and evaluations to Beacon. Compl. ¶¶ 22–26, 36, 38. Finally, they allege that lower levels of care, in particular outpatient care, had been attempted numerous times without success. Compl. ¶ 56.

        2)        Defendants Imposed Additional Criteria

Plaintiffs also plead sufficient facts to plausibly allege that Beacon imposed additional criteria when it evaluated the medical necessity of M's treatment at Aspiro and D.A. They allege that Aspiro and D.A. both offer sub-acute treatment, but that Beacon imposed acute-level treatment medical necessity standards to deny coverage of M.'s treatment at those facilities. Contrary to Defendants' argument, Plaintiffs plead specific facts to support this allegation.

Specifically, Beacon allegedly denied coverage of M.'s treatment at Aspiro because M. presented "no particular issue of danger to himself or others," "[t]here was no overt, consistent aggression that required continuous supervision," and "[M.] had no severe deficits in self care." Compl. ¶ 37. Similarly, Beacon allegedly denied coverage of M.'s treatment at D.A. because M. was "in touch with reality and . . . did not have severe medical problems" and was experiencing mild suicidal and homicidal ideation only. Compl. ¶ 39. Plaintiffs contend that these justifications align with the requirements for treatment at an acute care facility, rather than at a sub-acute care facility. Compl. ¶¶ 42, 43.

In addition, Plaintiffs plead that Beacon referenced M.'s autism diagnosis and his supportive parents as justifications for denial of coverage for his treatment at both Aspiro and D.A., despite the fact that neither autism nor supportive parents are reasons to deny coverage under the Plan. Compl. ¶¶ 23, 44, 45. These factual allegations, taken as true, suggest that Beacon required that M. satisfy additional criteria, specifically acute-level treatment medical necessity criteria, to obtain coverage for sub-acute treatment at Aspiro and D.A.

       3)       Comparable Medical and Surgical Services Are Not Required to Meet Additional Criteria

Finally, Plaintiffs have plausibly pleaded that Beacon does not impose acute care medical necessity criteria on beneficiaries seeking treatment at sub-acute medical and surgical facilities. Plaintiffs compare Aspiro and D.A. to skilled nursing facilities, inpatient hospice care, and rehabilitation facilities, noting that all three are sub-acute inpatient treatment facilities. They contend that the Plan does not exclude or restrict coverage of those services based on the same criteria for which coverage of treatment at Aspiro and D.A. was excluded.

Defendants suggest that these allegations lack factual basis and are thus insufficient. But to state a plausible Parity Act claim, "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession." *Timothy D. v. Aetna Health & Life Ins. Co.*, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) (citation omitted). Prior to this litigation, Plaintiffs requested further information regarding the standards that Beacon applies when it evaluates benefits requests for treatment at skilled nursing facilities and rehabilitation facilities, but that information was not provided to them. Compl. ¶ 36. Defendants now argue that, because Plaintiffs did not plead facts that are uniquely within Defendants' control, Plaintiffs have failed to state a claim for which relief can be granted. The court disagrees.

"The nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions." *Timothy D.*, 2019 WL 2493449, at *4. This case is no exception. Using the information within their control, Plaintiffs have plausibly pleaded that Defendants do not treat coverage of mental health and substance abuse facilities in the same way that they treat coverage of comparable medical and surgical services. Thus, they have plausibly pleaded a violation of the Parity Act.

### III. Plaintiffs Can Bring Simultaneous Causes of Action

Alternatively, Defendants contend that Plaintiffs' Parity Act cause of action brought under Section 502(a)(3) must be dismissed because it is duplicative of their first cause of action, a claim for recovery of benefits brought under Section 502(a)(1)(B). The court first notes that there is no absolute prohibition on bringing simultaneous causes of action under Sections 502(a)(1)(B) and 502(a)(3). Second, the court concludes that it would be premature to decide that Plaintiffs' causes of action are duplicative of each other. Thus, dismissal at this stage of the litigation is improper.

 A. There is No Absolute Prohibition on Pleading Simultaneous Claims

As has been noted, two sections of ERISA's remedial scheme are at issue in this case, Sections 502(a)(1)(B) and 502(a)(3). Defendants suggest that when a plaintiff can state a claim for relief under Section 502(a)(1)(B), the plaintiff generally cannot maintain a simultaneous claim under Section 502(a)(3). The allegedly duplicative nature of causes of action brought under Sections 502(a)(1)(B) and 502(a)(3) has been the subject of extensive analysis by this court.[1] As it has before, the court concludes that there is no absolute prohibition on the maintenance of simultaneous claims under these sections.

While no Supreme Court or Tenth Circuit precedent directly addresses this issue, the Supreme Court has suggested that there is no absolute prohibition on simultaneous causes of action brought under Sections 502(a)(1)(B) and 502(a)(3). *See Varity*, 516 U.S. at 489 (addressing the trial court's grant of relief under both Sections 502(a)(1)(B) and 502(a)(3) and reversing the former, but making no mention of any issue with the plaintiffs litigating both causes of action simultaneously); *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (holding that Section 502(a)(1)(B)

---

[1] This court recently addressed this exact issue at length in *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209 (D. Utah 2019). For brevity, the court in this case summarizes the extensive legal analysis undertaken by the court in *Christine S.*

did not give the district court the authority to reform the plaintiff class's benefits plan, but that Section 502(a)(3) does authorize the equitable remedy of plan reformation).

To the contrary, Supreme Court precedent on this issue suggests that simultaneous causes of action are not inherently improper, as Section 502(a)(3) is intended to act as a "safety net" for plaintiffs whose injuries cannot be remedied by other provisions in Section 502. *See Varity*, 516 U.S. at 512. In the event that another provision of Section 502 adequately remedies a plaintiff's injury stemming from an alleged Parity Act violation, that plaintiff's Section 502(a)(3) cause of action will not be necessary. *See id.* at 515. However, in the event that another subsection of Section 502 does not, in fact, provide adequate relief for the alleged Parity Act injury, permitting parallel causes of actions pleaded in the alternative ensures that the plaintiff is able to make use of the safety net contemplated by the Supreme Court in *Varity*. This practice of alternative pleading is expressly contemplated in Rule 8 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 8(d)(2) (permitting parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones").

The court therefore concludes, as it has before,[2] that Plaintiffs' second cause of action need not be dismissed merely because it is brought simultaneously with a Section 502(a)(1)(B) cause of action.

---

[2] *See M.S.*, 2020 WL 1692820, at *6 (denying the defendants' motion to dismiss the plaintiffs' Section 502(a)(3) claim as duplicative of their Section 502(a)(1)(B) claim because the former was not "a mere repackaging" of the latter); *Candace B. v. Blue Cross and Blue Shield of Rhode Island*, 2020 WL 1474919, at *10 (D. Utah Mar. 25, 2020) (refusing to dismiss the plaintiffs' Section 502(a)(3) claim because it was "not clear that adequate relief exist[ed] under [Section 502(a)(1)(b)] for [the plaintiffs'] Parity Act claim" at the motion to dismiss stage); *Kurt W. v. United Healthcare Ins. Co.*, 2019 WL 6790823, at *6–7 (D. Utah Dec. 12, 2019) (concluding that the plaintiffs' request for payment of benefits did not wholly subsume their allegation that defendants had violated the Parity Act); *Christine S.*, 428 F. Supp. 3d at 1226 ("[T]he proper inquiry is whether the plaintiff's simultaneous ERISA claims are actually duplicative, meaning they seek to remedy the same injury with 'repackaged' causes of action."); *Michael W. v. United Behavioral Health*,

B. Dismissal of Plaintiffs' Parity Act Cause of Action Would Be Improper at This Stage

While there is no absolute bar to simultaneous Section 502(a)(1)(B) and 502(a)(3) causes of action, Plaintiffs are not entitled to simply repackage their first cause of action and bring it under Section 502(a)(3).[3] Nor are they entitled to duplicative recovery. In short, if "plaintiff[s] may obtain an adequate, make-whole remedy for [their] injur[ies] by pursuing a claim for monetary relief under Section 502(a)(1)(B), [they] may not also seek additional equitable relief under Section 502(a)(3) for the same injur[ies]." *Christine S.*, 428 F. Supp. 3d at 1226. Thus, the court must now determine whether the specific causes of action brought by Plaintiffs in this case are duplicative and thus warrant dismissal at this stage of the litigation.

Defendants argue that Plaintiffs have failed to point to any injury alleged under their second cause of action that would not be adequately remedied by the payment of benefits sought under their first cause of action. They therefore argue that Plaintiffs' second cause of action should be dismissed as duplicative. Plaintiffs respond that their causes of action are not duplicative and that their Parity Act claim thus should not be dismissed.

To determine whether Plaintiffs' second cause of action should be dismissed at this stage of the litigation, the court must consider two questions:

(1) Has the plaintiff alleged alternative theories of liability or suffered distinct injuries to justify pursuing simultaneous causes of action under both Section

---

420 F. Supp. 3d 1207, 1228 n.9 (D. Utah 2019) (noting that *Varity*, rather than acting as a bar to simultaneous causes of action, recognizes that Section 502(a)(3) "may be used to pursue claims for equitable relief that are not available in other sections of ERISA").

[3] This issue arises because the standard of review employed by a court reviewing a plan administrator's denial of benefits is more deferential to the administrator under a Section 502(a)(1)(B) claim than it is under a Section 502(a)(3) claim. *Christine S.*, 428 F. Supp. 3d at 1227. Thus, courts seek to ensure that plaintiffs do not evade the more deferential review employed by courts under a Section 502(a)(1)(B) claim by simply repackaging their Section 502(a)(1)(B) claims as Section 502(a)(3) claims. *Id.* As will be addressed in greater detail, the Section 502(a)(3) claim in this case is not merely a repackaging of a Section 502(a)(1)(B) claim. That concern is therefore inapplicable here.

> 502(a)(1)(B) and Section 502(a)(3)? (2) Do the monetary damages available for causes of action under Section 502(a)(1)(B) provide "adequate relief" such that the prevailing plaintiff can be made whole and completely remedy her injury or injuries without resorting to equitable relief?

*Id.*

The court concludes that dismissal of Plaintiffs' Parity Act cause of action would be improper at the motion to dismiss stage. First, Plaintiffs have pleaded alternative theories of liability and identified distinct injuries, rather than simply repackaging their wrongful denial of benefits claim into a Section 502(a)(3) claim. Second, the court cannot at this stage of the litigation determine whether Plaintiffs' wrongful denial of benefits claim will provide adequate relief to remedy the injury alleged under their Parity Act cause of action.

> 1) Plaintiffs' Causes of Action are Alternative, Rather Than Duplicative, Theories of Liability

The first step of the aforementioned inquiry, whether Plaintiffs' second cause of action represents an alternative or duplicative theory of liability, cuts against Defendants. Plaintiffs' Parity Act cause of action under Section 502(a)(3) represents an alternative theory of liability, rather than a repackaged Section 502(a)(1)(B) claim.

To illustrate the alternative nature of these causes of action, the court notes that Plaintiffs could not have sought relief for the alleged Parity Act violation under Section 502(a)(1)(B). Pursuant to Section 502(a)(3), a plaintiff can seek traditional equitable remedies for "any act or practice" that violates another substantive provision of ERISA. 29 U.S.C. § 1132(a)(3). Section 502(a)(1)(B), on the other hand, permits a plaintiff to recover benefits due, enforce his rights, or clarify his rights to future benefits only "under the terms of [his or her] plan," 29 U.S.C. § 1132(a)(1)(B). Thus, while relief under Section 502(a)(3) is not limited in scope to violations of rights due under a plaintiff's plan, the same cannot be said of relief sought under Section 502(a)(1)(B). *Varity* 516 U.S. at 489 (authorizing plaintiffs' recovery for defendants' breach of

15

fiduciary duty under Section 502(a)(3) and noting that recovery under Section 502(a)(1)(B) would be improper because the plaintiffs were no longer members of the benefit plan).

Plaintiffs in this case seek enforcement of the Parity Act, a substantive provision of ERISA not included in the Plan. Because the Parity Act is a substantive provision of ERISA, rather than a part of the Plan, Plaintiffs are authorized to seek remedies for violations of the Parity Act through Section 502(a)(3). *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016). They are not, however, authorized to seek relief for this violation under Section 502(a)(1)(B). Thus, Plaintiffs' could not have brought their second cause of action under Section 502(a)(1)(B). Their second cause of action is therefore not merely a repackaged Section 502(a)(1)(B) claim. Plaintiffs' two causes of action present alternative theories of liability, as is authorized by Rule 8 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8(d)(2).

In addition, Plaintiffs seek different remedies under these alternative theories of liability. Under their first cause of action, Plaintiffs allege that Defendants violated the terms of the Plan and improperly applied its medical necessity criteria when they failed to provide coverage for M.'s medically necessary treatment. To remedy this alleged injury, they seek payment of the wrongfully denied benefits.

Under their second cause of action, Plaintiffs allege that Defendants violated their statutory right "to have insurers treat mental health and medical coverage decisions equally" and that, as a result, they were improperly denied benefits under the Plan. *Christine S.*, 428 F. Supp. 3d at 1229 (citing to 29 U.S.C. § 1185a). To remedy this violation of the Parity Act, Plaintiffs seek various forms of equitable relief, including an injunction ordering the Defendants to cease violating the Parity Act, an order requiring the reformation of the terms of the Plan and the medical necessity

criteria used to interpret and apply the terms of the Plan, and an order requiring disgorgement of funds obtained by Defendants as a result of their alleged Parity Act violations.[4]

Under their first cause of action, Plaintiffs seek to hold Defendants liable for an injury stemming from their improper refusal of benefits. Alternatively, under their second cause of action, Plaintiffs seek to hold Defendants liable for an injury stemming from an alleged violation of the Parity Act. The latter is not merely a repackaged version of the former.

        2)        The Court Cannot Determine Whether Plaintiffs' First Cause of Action Offers Adequate Relief at This Stage of the Litigation

Second, the court must address whether the monetary damages sought under Section 502(a)(1)(B) will provide adequate relief such that Plaintiffs can be made whole without obtaining relief under Section 502(a)(3). *Varity*, 516 U.S. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). While Plaintiffs may not recover duplicative relief through simultaneous causes of action, it is impossible at this stage of the litigation for the court to determine the adequacy of Plaintiffs' potential remedy under Section 502(a)(1)(B). *See M.S.*, 2020 WL 1692820, at *6; *Christine S.*, 428 F. Supp. 3d at 1232–33. Thus, this inquiry also cuts against dismissal at this stage of the litigation.

The prematurity of this inquiry becomes clear when the court considers the possibility that Plaintiffs may not recover at all under their first cause of action. For example, Plaintiffs may fail

---

[4] The Supreme Court in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), addressed similar claims for relief sought by the plaintiffs and concluded that they were properly sought under Section 502(a)(3), rather than Section 502(a)(1)(B). For example, the court likened alterations to the benefits plan in that case to the traditional equitable remedy of contract reformation. *Id.* at 440–41. Similarly, the court analogized an injunction requiring that the plan administrator pay former beneficiaries the money owed to them under the reformed plan to the traditional equitable remedy of compensation for loss resulting from a trustee's breach of duty in order to prevent the trustee from being unjustly enriched. *Id.* at 441–42.

to demonstrate that Defendants improperly denied Plaintiffs' request for benefits, meaning that Plaintiffs are entitled to no relief for any such violation of the terms of the Plan. That determination would not, however, prevent a finding that Defendants violated the Parity Act by imposing more stringent medical necessity criteria on mental health and substance abuse treatment and that Plaintiffs were injured by that violation. Thus, Plaintiffs would be entitled to relief from Defendants' violation of the Parity Act, but Section 502(a)(1)(B) would not provide them with such relief.

It is impossible for the court to know whether Plaintiffs will be adequately remedied through their Section 501(a)(1)(B) cause of action, as the court cannot know whether Plaintiffs will be entitled to relief under that section at all. Thus, "[a]t this stage, it is premature to tell what relief, if any, would be available to Plaintiffs, much less whether granting both monetary and equitable relief is duplicative." *Christine S.*, 428 F. Supp. 3d at 1233. Dismissal is therefore inappropriate.

## IV. Plaintiff Christa R. Lacks Standing

Defendants also move this court to dismiss Plaintiff Christa R. from the action as she lacks standing to assert either of Plaintiffs' claims. Defendants argue that Plaintiffs' complaint contains no allegations that Christa is a participant, beneficiary, or fiduciary of the Plan. Section 502(a)(1)(B), however, states that a civil action may be brought only by "a participant or beneficiary" of the plan. Similarly, Section 502(a)(3) specifies that a civil action may be brought by a "participant, beneficiary, or fiduciary." Plaintiffs do not argue that Christa is a participant, beneficiary, or fiduciary of the Plan and they do not object to Defendants request that Christa be dismissed. Christa is therefore dismissed from this action.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff Christa R. is hereby DISMISSED from this action.

Signed September 11, 2020

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge